# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | |
| **Alleged partnership of PHILLIP** ) | Case No. 04-04184 |
| **ASHBAUGH and DAVID LEO** ) | |
| **HALL, d/b/a MERIDIAN DRY** ) | |
| **CLEANERS,** ) | |
| ) | |
| Debtor. ) | **MEMORANDUM OF DECISION** |
| ) | |
| _____ ) | |

## INTRODUCTION

The question before the Court in this chapter 11 case is whether the employment of the law firm of Elam & Burke, P.A. ("EB"), by the debtor in possession may properly be approved under § 327(a). The U. S. Trustee ("UST") says no. The matter was taken under advisement at the conclusion of a hearing on December 20, subject to post-hearing submissions that have now been filed.

The Court concludes the UST is correct. This Decision constitutes the Court's factual findings and legal conclusions. Fed. R. Bankr. P. 9014, 7052.

## BACKGROUND AND FACTS

To answer the question, some background about the parties, their relationships and disputes, and their choice of counsel must be provided.

MEMORANDUM OF DECISION - 1

A voluntary petition for chapter 11 relief was filed on November 22, 2004 by the debtor as above identified, *i.e.*, the "Alleged Partnership of Phillip Ashbaugh and David Leo Hall, d/b/a Meridian Dry Cleaners" (hereafter "Debtor"). *See* Doc. No. 1. The petition was signed by Jennifer Miller, as the personal representative of an unnamed "deceased alleged Partner." *Id.* It is uncontested, as later submissions assert, that the deceased alleged partner is Phillip Ashbaugh.

The other alleged partner, David Leo Hall, previously commenced a chapter 13 case, which was disclosed on the petition herein. *See* Doc. No. 1 at 2 (referencing Case No. 03-02882 as one filed by a partner or affiliate of Debtor).[1] Hall did not sign the petition in Debtor's case. However, he did sign the statement of financial affairs and the declaration regarding Debtor's schedules. *See* Doc. No. 4. He also signed a "Consent to Filing" of Debtor's petition. Doc. No. 5.

Hall was represented in his prior chapter 13 case by attorney Kelly Beeman. Beeman continues to represent Hall and has attended hearings on Hall's behalf in Debtor's case.

Even though his filing was made as an individual chapter 13 debtor, Hall indicated that the estate of Phillip Ashbaugh was a "partner" with an interest "assumed to be 50%." *See* Case No. 03-02882, Doc. No. 12 at statement of

---

[1] The Court takes judicial notice of the pleadings of record in Case No. 03-02882, as well as those in the instant case. Fed. R. Evid. 201.

MEMORANDUM OF DECISION - 2

financial affairs, question 21.² In response to the requirement to list his "Interests in partnerships or joint ventures," Hall stated "Value included in real property" and listed a current market value of that interest at "$0.00." *Id.* at schedule B. He also indicated that the "estate of Phillip Ashbaugh" was a co-debtor in regard to an obligation due Jerry Mortensen. *Id.* at schedule H.³ Hall did not otherwise list the Ashbaugh estate as a creditor. *Id.* at schedule F.

In February, 2004, Hall converted his chapter 13 case to a chapter 11. Case No. 03-02882, Doc. No. 33. Thereafter, he asked the Court for approval of his employment of counsel, Dennis Sallaz, for the purpose of representing him, as a debtor in possession, in a lawsuit against (a) the estate of Phillip Ashbaugh, (b) that estate's attorney, (c) Miller as its personal representative, (d) another individual and (e) a notary public. *Id.*, Doc. No. 50.

In May, 2004, Miller -- appearing in Hall's case through EB -- asked the Court for an extension of time to object to Hall's discharge and/or dischargeability of debt, and sought to conduct Rule 2004 examinations of Hall and another individual. *Id.*, Doc. Nos. 61, 62, 63. Miller alleged, among other things, that

---

² This question states "If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership." Hall answered the question even though his filing was made as an individual (as all chapter 13 cases must be, *see* § 109(e)).

³ While the Ashbaugh estate might have been a chapter 13 "co-debtor," *see* § 1301, that entity was not and could not be a "joint debtor." *See* § 302 (authorizing a filing as joint debtors only for an individual and that individual's spouse); *Fitzgerald v. Hudson (In re Clem)*, 82 I.B.C.R. 205, 206 (Bankr. D. Idaho 1982).

MEMORANDUM OF DECISION - 3

"there is considerable conflict as to the ownership of property and the dissolution of the partnership between [Hall] and the deceased, Mr. Phillip Ashbaugh." *Id.*, Doc. No. 61 at 2.

In June, Miller moved the Court for relief from stay in order to proceed with a state court action to wind up the partnership. *Id.*, Doc. Nos. 65, 66, 67. This request was granted in August. *Id.*, Doc. No. 87.

Hall's chapter 11 case was dismissed, without opposition, in October, 2004. Part of the reason Hall did not contest dismissal was the fact that creditors Jerry and Lorraine Mortensen had by then obtained relief from stay. *Id.*, Doc. No. 34, 35, 45, 72, 73, 78. That relief related to certain real property in Meridian, Idaho where the business "Meridian Dry Cleaners" operates, with Hall as its day-to-day manager.[4] This stay relief obviously had a significant impact on Hall's ability to reorganize in chapter 11.

Following dismissal, activities continued in the state court action, with Hall and the Ashbaugh estate represented by their separate counsel. Additionally, the Mortensens scheduled a trustee's sale on the deed of trust on the Meridian property

---

[4] The Court observed in its Supplement to Order Terminating Automatic Stay that Hall claimed at least a one-half interest in that real property, but "further asserts that he should be found to hold the entire fee interest in the property, and he anticipates a lawsuit to establish his ownership." *Id.*, Doc. No. 78 at 2 n.3.

MEMORANDUM OF DECISION - 4

for November 23, 2004. *See* Doc. No. 2 at 3. That sale was stayed by the November 22 filing of the instant case.[5]

### A. The Application

On December 8, 2004, Debtor filed an application seeking Court approval of its employment of EB as counsel in this chapter 11 case. Doc. No. 6 ("Application").[6] The Application notes that EB has and does represent Miller and the estate of Phillip Ashbaugh, but alleges this creates no disqualification. *Id.* at 2, ¶ 3. It further states that EB "does not represent or hold any interest adverse to debtor in possession, except as noted below in paragraph 5 through 8 and as waived by Consent to Representation signed by Jennifer Miller." *Id.*

In the referenced paragraphs, the Application acknowledges that Miller and the Ashbaugh estate have claims against Hall, and Hall has claims against the Ashbaugh estate and Miller. *Id.* at 2, ¶ 5. In furtherance of the request of Debtor for approval of EB's employment, Miller and the Ashbaugh estate "waive any claim against the alleged partnership and its property until such time as the legitimate claims of creditors are paid . . .." *Id.* at 3, ¶ 7. *See also* Doc. No. 7.

---

[5] The Mortensens' motion for stay relief in the present chapter 11 case was also heard and taken under advisement. It is addressed by a separate Decision also issued this date.

[6] The Application states it is made by "Jennifer Miller, the personal representative of the Estate of Phillip Ashbaugh, as Applicant for the debtor in possession." Doc. No. 6 at 1. Whether *Miller* wants to employ (or, rather, continue her employment of) EB does not require a § 327(a) ruling; that section addresses only approval of employment of professionals by the trustee or debtor in possession. Consistent with the request urged at hearing, the Court treats the Application as that of *Debtor* not Miller.

MEMORANDUM OF DECISION - 5

The Application asserts that Miller paid EB for the preparation of the bankruptcy pleadings and papers, and the filing fees for the case. EB advised the Court at hearing that this was incorrect, and that a third party had advanced the filing fees, and nothing had been paid EB for work on the bankruptcy case.[7]

There was no Rule 2016(b) disclosure filed at the time of hearing on the Application. That disclosure, filed late,[8] asserts that no attorneys' fees were paid and that the filing fee of $839.00 was paid by someone "other" than Debtor, though it does not specify the party as required. *See* Doc. No. 14; *see also* Procedural Form No. B 203. The Rule 2014(a) statement asserted that Boyd Lowder, Miller's father, paid it. Doc. No. 7 at 2.

At the December 20 hearing, EB indicated that its direction in the case as Debtor's counsel would come from Hall, as Debtor's "managing partner" and that, while EB would also continue to be Miller's and the Ashbaugh estate's lawyer, it had the approval and consent of those clients to the requested representation of the Debtor partnership.

---

[7] The statement of financial affairs requires disclosure of any payments to counsel for assistance with the debtor's bankruptcy and, here, the answer given was "none." *See* Doc. No. 4 at statement of affairs, question 9.

[8] The disclosure was due within fifteen days of the petition's filing on November 22. *See* Rule 2016(b). No request for extension was made. The disclosure was filed on December 28. *See* Doc. No. 14.

MEMORANDUM OF DECISION - 6

    B.   **The Stipulation**

A "Stipulation and Agreement for Payment of Professional Fees" was filed on December 28, simultaneously with the Rule 2016(b) disclosure. *See* Doc. No. 16 ("Stipulation"). It asserts a management structure different from that discussed on December 20: "Decisions for the operation of the Debtor will be joint. In this regard Miller and Hall will confer with Counsel in the conduct of the business and the progress of this bankruptcy proceeding." Doc. No. 16 at 2. Hall and Miller essentially agree to stay the resolution of their disputes *inter se* until all other creditors of Debtor have been paid.

The Stipulation also indicates that "Hall and Miller agree to pay fees to Counsel personally and have negotiated a total cap of $5,000.00 in fees and costs to be split equally between the parties." Doc. No. 16 at 2.[9]

**DISCUSSION AND DISPOSITION**

The UST contends that Debtor's employment of EB contravenes § 327(a) which requires that the estate's professionals "not hold or represent an interest adverse to the estate" and be "disinterested persons." The UST does not contend that EB is not disinterested, a term defined in § 101(14). Rather, the UST argues that EB represents an interest adverse to the estate, that of Miller and the

---

[9] The UST sees the fee arrangement as raising additional disqualifying issues. Given the Court's decision on the Application, these additional issues need not be addressed.

MEMORANDUM OF DECISION - 7

Ashbaugh estate, and is therefore disqualified from employment as Debtor's counsel.

EB argues that, whatever merit there might be to the UST's objections to approval of employment under the strictures of § 327(a) and the case law, the Court should nevertheless allow EB to serve in the role of Debtor's counsel. EB contends that, unless this occurs, Debtor's prospects for reorganization may be dimmed or extinguished. *See* Doc. No. 7 at 2. It views the waiver of conflict by and between Miller and Hall and the payment arrangement reached as sufficient solutions to any adversity. *Id.*

It has not been established that, if Debtor is required to have disinterested and impartial bankruptcy counsel (*i.e.*, ones who do not represent other interested parties or creditors), it will necessarily be unable to proceed with the case. But even if this were established, it makes no difference. The determination of whether counsel's employment should be approved is not driven by the arguments EB and its client(s) have suggested. Rather, the determination is driven, as it must be, by the settled law regarding § 327(a).

This Court has repeatedly addressed the precise issue presented here: whether a proposed professional's representation of a creditor, equity holder or other interested party constitutes representation of an adverse interest within the prohibition of § 327(a). *See*, *e.g.*, *In re Thompson*, No. 00-00013, 2000 WL 33716961 (Bankr. D. Idaho Mar. 1, 2000); *In re MDR, Inc.*, No. 98-30401, 1999

MEMORANDUM OF DECISION - 8

WL 33486707 (Bankr. D. Idaho Aug. 3, 1999); *In re Dugger*, 99.1 I.B.C.R. 30 (Bankr. D. Idaho 1999); *In re Leypoldt*, 95 I.B.C.R. 220 (Bankr. D. Idaho 1995); *In re Bliss Valley Foods, Inc.*, 88 I.B.C.R. 281 (Bankr. D. Idaho 1988), and 89 I.B.C.R. 4 (Bankr D. Idaho 1989) (denying motion to alter or amend).[10]

While each case, including the present one, must be evaluated on its own facts, the Idaho authorities, and those of other jurisdictions cited in the Idaho cases, stand opposed to the proposition advanced by Debtor and EB here. And they are unrebutted.[11]

---

[10] In addition to the many opinions cited and analyzed in this Court's prior decisions, many others address the same issues. Two of those follow.

*In re Granite Partners, L.P.*, 219 B.R. 22 (Bankr. S.D.N.Y. 1998), discusses disqualifying adverse interests and relationships, including those "however slight, 'that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.'" *Id.* at 33. It notes that a "professional has a disabling conflict if it has 'either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors – an incentive sufficient to place those parties at more than acceptable risk – or the reasonable perception of one.'" *Id.*

*In re TMA Assocs., Ltd.*, 129 B.R. 643 (Bankr. D. Colo. 1991), observed that general partners are individually liable for partnership debts and are contingent obligors of the partnership debtor and parties with contingent claims against one another. *Id.* at 646. It found that the dual representation of partner and partnership always raises at least the potential for conflict and, given the strict obligations owed a debtor and estate, disqualification is appropriate under § 327(a) "to prevent even the appearance of conflict, irrespective of the integrity of the person or firm under consideration." *Id.* at 647.

[11] Litigants have the burden of identifying and addressing prior precedent relevant to their requested relief. *See* Fed. R. Bankr. P. 9011(b)(2) (signing and submission of pleading constitutes a certification that to the best of the signer's information and belief, formed after reasonable inquiry, the legal contentions therein are warranted by existing law or a nonfrivolous argument for extension, modification or reversal of existing law). This Court has further observed that, for several prudential reasons, it does not "lightly disregard" its prior decisions and departs from them only for compelling reasons, and that the burden is on the party requesting

(continued...)

MEMORANDUM OF DECISION - 9

Debtor, Miller and Hall urge the Court to conclude that Debtor is a partnership (something critical to the defense of the Mortensens' stay relief motion).[12] They contend that Hall and the Ashbaugh estate are the sole partners, with each holding a 50% interest. While it is submitted that the partners are in agreement and strategic alignment (as they likely now must be to defend against the Mortensens), this clearly was not the case even as late as mid-2004 when pleadings were filed in Hall's bankruptcy case. Nor is there any guarantee that this will remain so throughout the present chapter 11 case.

EB indicated at the December 20 hearing that Hall would be the managing partner. It would not be difficult to conceive of a situation where Hall might wish to direct Debtor's counsel in a manner inimical to the desires of Miller. That Debtor's counsel represents Miller and the Ashbaugh estate in litigation against Hall, among others, clearly presents an issue of adversity.[13] Indeed, the Application, Rule 2014(a) affidavit, and the Stipulation recognize this problem;

---

[11](...continued)
such departure to establish good and sufficient cause through "clear and cogent analysis." *In re DeBoer*, 99.3 I.B.C.R. 101, 103 (Bankr. D. Idaho 1999). EB did not at any time address any of the relevant authorities.

[12] EB stated that the sole reason this chapter 11 filing was made by an "alleged" partnership was to acknowledge the Mortensens' dispute that any partnership exists.

[13] "Adverse interest" is not statutorily defined but the cases recognize that possession of economic interests that would either tend to lessen the value of the bankruptcy estate or would create an actual or potential dispute in which the estate is a rival claimant, qualify. *See, e.g., Thompson*, 2000 WL 33716961 at *4.

MEMORANDUM OF DECISION - 10

each admits that such disputes exist but submits that they will be set aside or abated until the mutual goals are achieved.

The "clarification" in the Stipulation that decision-making will be "joint" does not eliminate the conflicting interests between the partners; it only places both partners at the same table, hopefully but not guaranteed to be in sync. Hall has a lawyer (Beeman) at that table, and Miller also has a lawyer (EB). However, EB would also be obligated to impartially and faithfully serve the interests of the estate of Debtor and all its creditors, and that is where the problem lies.[14]

The fact that an adversity of interest exists is sufficient for disqualification, and the Court need not weigh, measure or evaluate the degree of conflict. *See Dugger*, 99.1 I.B.C.R. at 32; *First Interstate Bank of Nevada, N.A. v. C.I.C. Inv. Corp. (In re C.I.C. Inv. Corp.)*, 175 B.R. 52, 56 (9th Cir. BAP 1994)). This extends to any argument that the Court should attempt to distinguish "actual" from "potential" conflicts, as that is an imprecise and ultimately unnecessary exercise. *Thompson*, 2000 WL 33716961 at *4 (citing *Leypoldt*, 95 I.B.C.R. at 223); *Bliss Valley Foods*, 89 I.B.C.R. at 5.[15]

---

[14] *TMA Assoc., Ltd.* indicates that the representation of partner as well as partnership inherently raises competing interests sufficient for § 327(a) disqualification. 129 B.R. at 646-47. The prior decisions of this Court, such as *Thompson*, *Bliss Valley Foods* and *MDR*, concerned corporations and their equity holders, but are not dissimilar in analysis or result. And, in addition to the adverse and competing interests that the partnership relationship inherently generates, the facts here, as outlined above, reflect other claims between these parties.

[15] The Hon. Alfred C. Hagan explained in the *Bliss Valley Foods* decisions that the rule
(continued...)

MEMORANDUM OF DECISION - 11

The Stipulation, among other submissions, evidences Hall's and Miller's waiver of conflicts. Doc. No. 16 at 1. But in addition to the competing creditor and/or partner interests of Hall and the Ashbaugh estate, there are the interests of a number of third-party creditors of Debtor that must be considered. *See* Doc. No. 4 at schedules D, F. That Hall and Miller might "consent" to EB's dual representation or "waive" conflicts is not a cure. *Thompson*, 2000 WL 33716961 at *4 (citing *In re American Printers & Lithographers, Inc.*, 148 B.R. 862, 867 (Bankr. N.D. Ill. 1992) (other citations omitted)); *MDR, Inc.*, 1999 WL 33486707 at *2 n.10; *TMA Assoc., Ltd.*, 129 B.R. at 647-48.

---

[15](...continued)
against adverse interest was strictly applied, and operated to assure all participants in the process that the professionals had undivided loyalty to the estate and, derivatively, all its creditors. The purpose of the Code's limitation would be thwarted by allowing counsel with multiple loyalties to serve. Thus:

> Counsel may not place themselves in a position where they may have to chose between conflicting duties. The creditors should not be placed in a position where such choices could be made to their detriment.

88 I.B.C.R. at 286 (footnote omitted). Judge Hagan later commented:

> [T]he representation of a debtor in a Chapter 11 proceeding is a situation which has little similarity with any other client-professional relationship. A bankruptcy estate is not a typical client. A Chapter 11 estate is not composed solely of the equity security holders and the officers of the debtor-in-possession. The rights of creditors must also be considered as part of the estate entity. Where loyalty is owed in different degrees to these competing interests, or the possibility of such is present, the relationship of client and professional cannot be approved.

89 I.B.C.R. at 5-6.

MEMORANDUM OF DECISION - 12

**CONCLUSION**

More could easily be said. But it has already been said, at length, in the Idaho Bankruptcy Court decisions cited above. That explanation and analysis, and the authorities there cited and relied upon, can be and are incorporated by reference.

"The burden of proving the absence of an adverse interest, and establishing the propriety of the suggested employment, is upon the applicant and the proposed professional." *Thompson*, 2000 WL 33716961 at *5. That burden was not carried here.[16] As a result, the Application cannot be approved.

The Court takes seriously the suggestion that enforcing § 327(a) might lead to an inability to retain counsel, to reorganize, or to fully pay creditors from Debtor's perceived real estate equity. However, even if accurate, such concerns cannot support a conclusion contrary to the statute and the law. *See In re Larson*, 04.1 I.B.C.R. 20, 24 (Bankr. D. Idaho 2004) (finding the argument that disqualification of counsel would cause serious and perhaps irreparable injury to debtor an insufficient basis to find counsel qualified when he was not).

---

[16] In lieu of addressing the case law, Debtor made arguments amounting to an "equitable" plea to approve EB's employment notwithstanding the lack of compliance with § 327(a) because of the size and nature of Debtor's case and the potential adverse consequences of a denial of approval. However, this Court's equitable powers are limited and do not amount to a "roving commission" to do equity, even if it were to agree with the suggested characterizations. *Pacific Shores Dev., LLC v. At Home Corp. (In re At Home Corp.)*, No. 03-15769, 2004 WL 2984300, at *5 (9th Cir., Dec. 28, 2004) (citing *Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman)*, 325 F.3d 1168, 1175 (9th Cir. 2003)).

MEMORANDUM OF DECISION - 13

The UST's objection will be sustained and the Application seeking approval of Debtor's employment of EB will be denied. The UST shall submit an appropriate form of order.

DATED: **January 6, 2005**

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE